**68817-75-61**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NORDSTROM CONSULTING, INC.; | ) | |
| STEVEN NORDSTROM | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| v. | ) | No. |
| | ) | |
| INNOVA SYSTEMS, INC.; an Illinois Corporation; | ) | |
| CHERYL NORDSTROM, individually, | ) | |
| | ) | |
|     Defendants. | ) | |

### COMPLAINT

Now comes plaintiffs, NORDSTROM CONSULTING, INC. and STEVEN NORDSTROM, by and through its attorneys, McKenna Storer and for its Complaint, states as follows:

### Introduction

1.   This is a complaint in a civil action seeking damages and injunctive relief for Copyright Infringement under the Copyright Act, 17 U.S.C. § 501, violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Lanham Act, 15 U.S.C. § 1125, and the Leahy-Smith America Invents Act, 35 U.S.C § 256.

### Jurisdiction and Venue

2.   This court has jurisdiction pursuant to 28 U.S. Code § 1331 for all issues arising under Federal Law. Jurisdiction arises under the provisions of the Copyright Act, 17 U.S.C. § 501, violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Lanham Act, 15 U.S.C. § 1125, and the Leahy-Smith America Invents Act, 35 U.S.C § 256.   Venue lies in the Northern District of Illinois in that during all times relevant, Plaintiffs and Defendants were engaged in business in this district and were residents of this district.

1

**Parties**

3.   Plaintiff Nordstrom Consulting, Inc., ("NCI") an Illinois Corporation, is in the business of designing, developing, marketing and licensing software and selling complete systems for vision testing. NCI holds the copyright protections at issue in this complaint.

4.   Plaintiff Steven Nordstrom is the president and sole owner of NCI.

5.   Defendant Innova Systems, Inc., an Illinois corporation, markets, sub-licenses and distributes software systems for vision testing developed by NCI.

6.   Defendant Cheryl Nordstrom is the president and sole owner of Innova Systems, Inc. ("Innova").

**Common Facts to All Counts**

7.   Nordstrom Consulting, Inc., was incorporated on December 23, 1991.

8.   In 2000-2001, Steven Nordstrom developed various vision-specific software that tests vision known as" NCI Vision Testing Systems." ("VTS") Steven Nordstrom, after extensive research on the complex technical and mathematic requirements for enabling precise visual acuity and related measurements, wrote the computer source codes to develop the vision testing computer programs.

9.   Steven Nordstrom applied for and received copyright registrations for its VTS and certain derivatives and assigned them to Nordstrom Consulting, Inc.   At all times herein, NCI maintained ownership of the copyrights. The original VTS is registered at the U.S. Copyright Office as: TX0006211159. Current unregistered derivatives are: 1.) Innova Provideo Classic, 2.) Innova Provideo Complete, 3.) NCI OcuTest Gold and 4.) NCI OcuTest Platinum vision testing systems. Subsequently, Nordstrom developed (2004), the second original system, and registered the same at the U.S. Copyright Office as: TX0006211160. Current unregistered derivatives are: 1.) Innova Provideo Basic, 2.) Innova Provideo One, 3.) Innova CCT-Rabin Cone Contrast, 4.) NCI OcuTest Institutional, 5.) NCI OcuTest Silver, 6.) NCI OcuTest Extended (CCT-Rabin Cone Contrast Test).

2

Nordstrom also developed a program that provides "closed-loop" calibration of the Rabin Cone Contrast Test (standard test for color vision deficiency of the USAF, also used by the FAA, US Navy and US Army.) All unregistered derivatives are in the process of being registered. (Ex. A)

10. All software was licensed to end users by NCI and a Nordstrom consulting, Inc. copyright notice to that effect was on the "splash screen" of every system. (Exhibit A)

11. Steven Nordstrom was the sole creator behind the creation of the VTS. The VTS was released through a joint venture with M&S Technologies starting in March of 2001 and licensed under the M&S label, with the Nordstrom Consulting, Inc. copyright notice, until November of 2005. (See Exhibit B)

12. On October 20, 2005, a new corporation was created called Innova Systems, Inc.

13. Steven Nordstrom caused a corporation to be formed to market and sell NCI's VTS. Steven Nordstrom's then wife, Cheryl Nordstrom, was made the president of Innova and sole shareholder by Steven Nordstrom when Innova was incorporated.

14. Prior to the divorce in 2013, Cheryl performed some administrative duties for Innova, but did not participate in the day to day operations, or in the development, production, shipping, maintenance or licensing of any software distributed by Innova. Cheryl only participated in decisions requiring the approval of the President, a few seminars and in the necessary meetings to ratify the actions of the company.

15. Innova was created to only market and sell the VTS; Nordstrom Consulting did not sell, grant or transfer its copyright interests in the VTS to Innova. Nordstrom Consulting did not lose its rights to use, sell, grant or transfer its copyright interests.

16. From 2006 through 2013, the VTS was licensed through Innova Systems, Inc., with the Nordstrom Consulting, Inc. copyright notices. (Ex. C)

17. In 2006-2007, NCI and Steven Nordstrom were involved in a Copyright infringement and Digital Copyright Millennium Act ("DCMA") case involving the VTS against M & S Technologies for attempting to violate the copyright. That lawsuit was settled.

18. Thereafter, in approximately 2013, Steven Nordstrom and Cheryl Nordstrom divorced.

19. Following a trial for divorce on the contested issue of property ownership, on September 20, 2015, the judge entered a judgment for dissolution of marriage, which provided in relevant part:

> E.   Ms. Nordstrom is awarded Innova Systems, Inc., and a license to sell, service and otherwise support all products listed on the product, patent and copyright exhibits at trial, as well as the same license for any products Mr. Nordstrom has since developed. Any product developed by Mr. Nordstrom within the next twenty-four months will be presumptively considered as having been 'incubated' if not developed during the marriage and the license will apply to those products as well. Ms. Nordstrom will be entitled to full access to all source codes, schematics and other information regarding any such products, patents and copyrights.
>
> F.   Mr. Nordstrom is awarded Nordstrom Consulting, Inc. as his non-marital property.

(Ex. D) The products listed at trial included the VTS systems.

20. The divorce decree did not award Defendants any ownership rights in the VTS, only a license to "sell, service and otherwise support" VTS.

21. The divorce decree did not prevent Plaintiffs from exercising their ownership rights to the VTS, including distributing it or providing a license to distribute.

22. At an undetermined point in time, Innova changed the copyright ownership information on the VTS software sold by Innova to reflect that Innova is the copyright owner, rather than NCI. (Ex. F)

23. On the software, the owner of the copyright has been changed from "Nordstrom Consulting, Inc." to "Innova Systems, Inc." and is reflected on the "splash screen", the first screen seen when the software is opened. (Ex. B, C and F)

24. Plaintiffs discovered the change in copyright attribution when it was brought to Steven Nordstrom's attention by a customer, who knew NCI to be the rightful owner of the copyright.

25. Based on information and belief, Innova, Cheryl Nordstrom or someone under Defendants' direction has been "scrubbing" the copyright information listed on the copyright info and substituting Innova on the splash screen for the VTS.

26. A search of the LOC Copyright database does not show any registered copyrights under Cheryl Nordstrom, Innova Systems or John Krsek, who was a programming consultant to Innova.

27. Upon information and belief, Cheryl Nordstrom, Innova and John Krsek, do not have any registered copyrights.

28. As a result of Defendants' actions, Plaintiffs' interest in the copyright has been compromised and Plaintiffs have lost job opportunities and the ability to market Steven Nordstrom and NCI as the creator of the VTS systems.

29. As a result, Steven Nordstrom and NCI have also been impeded in their ability to assert prior copyrights in order to get future contracts.

30. Innova is also taking credit for research and product development that Steven Nordstrom and Nordstrom Consulting, Inc. has done.

31. On its website, Innova claims Innova developed all the VTS software. (Ex. G) Steven Nordstrom and Nordstrom Consulting, Inc. created the VTS software.

32. On its website, Innova also claims it was invited as the industry advisor to the American National Standards Institute "ANSI" Committee on computerized vision testing, when it was Steven Nordstrom (of NCI) who served as the advisor and submitted recommendations to the ANSI Committee. (Ex. H)

33. Innova has also done a slight modification of a low luminance test in Nordstrom's initial release of the Air Force color test systems Nordstrom created in 2010 and has prepared presentations wherein Innova represents that it is the sole source for the entire Rabin Cone Contrast test.

5

34. Based on information and belief, Defendants have told at least one other potential customer that Nordstrom was selling an "unauthorized" version of the Rabin Cone Contrast Test (color vision deficiency test) and advising them not to buy from NCI.

35. Plaintiffs have now applied for, and been issued patents for products that were created by Steven Nordstrom, claiming to be the inventors and owners of the works. (Group Ex. I and Group Exhibit J)

36. In 2013, Plaintiffs submitted a patent application, Application Pub No 2013/0293846A1, serial number 13/887,272 for "Method and Apparatus for Testing for Color Vision Loss ("the '272 Application"). The inventors were listed as Nordstrom Cheryl (Hinsdale, US), Nordstrom Steven B. (Hinsdale, US), Rabin Jeffrey (San Antonio, US). This application was subsequently abandoned by the Defendants.

37. Prior to the abandonment of the '272 Application, the Defendants filed a virtually identical patent application as a Continuation Application under Application Pub No 2014/0218,692A1, serial no 14/251,286, also titled "Method and Apparatus for Testing for Color Vision Loss" ("the '286 Application"), but changed the inventor information to Nordstrom Cheryl (Hinsdale, US), Rabin Jeffrey (San Antonio, US), Gooch John M. (Brooks City-Base, US) and removing Steven Nordstrom. This application was also subsequently abandoned by the Defendants.

38. Prior to the abandonment of the '286 Application, the Defendants filed yet another virtually identical patent application as a Continuation Application under serial no. 14/819,046 titled "Method and Apparatus for Testing for Color Vision Loss" ("the '046 Application"), listing as inventors Nordstrom Cheryl (Hinsdale, US), Rabin Jeffrey (San Antonio, US), Gooch John M. (Brooks City-Base, US). This application was filed with a request for non-publication and, as such, was undiscoverable by Steven Nordstrom during the application process.

39. The '046 Application issued on February 6, 2018 as U.S. Patent No. 9,883,794 ("the '794 Patent") listing inventors as Cheryl Nordstrom, Jeffrey Rabin and John M. Gooch. Each of these inventors assigned their rights to Innova Systems, Inc., now the sole owner of the '794 Patent.

40. On information and belief, a further application, U.S. Patent Application Serial No. 15/888,553 ("the '553 Application), was filed as a continuing application of the '046 Application on February 5, 2018, prior to the issuance of the '046 Application as the '794 Patent.  This application has not been published.

41. Without Steven Nordstrom's knowledge or consent, his name was removed as the inventor of the '286 Application, the '046 Application and the '553 Application.

42. Steven Nordstrom was one of the inventors of the method and apparatus for testing for color vision loss identified by the above applications and should have been included on the '794 Patent as an inventor.

43. Cheryl Nordstrom also applied for and received a patent for a "method and apparatus for administering a low luminance visual dysfunction test", patent number US 9,833,137 ("the '137 Patent"), issued December 5, 2017. The sole inventor on the patent is listed as Cheryl Nordstrom. Steven Nordstrom was an inventor on the '137 Patent and should have been so listed.

## Count I – Violation of the Copyright Act

1-43.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 as if fully restated herein.

44..    Under the Copyright Act, the "legal or beneficial owner of an exclusive right under a copyright" may bring an action for infringement. 17 U.S.C. § 501(b).  The owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)    to reproduce the copyrighted work in copies or phone records;

(2)    to prepare derivative works based upon the copyrighted work;

(3)    to distribute copies or phone records of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)    in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

7

(5)     in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)     in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 USCS § 106.

45.     The elements of copyright infringement are: (1) ownership of a valid copyright and (2) copying of constituent original elements.

46.     Plaintiffs have a valid ownership interest in the copyright.

47.     Defendants have copied the constituent original elements and sold them as if they hold the copyright.

48.     Plaintiff lost some measure of its value by losing competitive (and potentially pricing) advantage. This is a concrete and particular injury.

Wherefore, Plaintiffs are entitled to such relief as injunctive relief, actual damages, profits gained by the illegal use of the copyright, and attorney fees and costs.

**Count II - Digital Millennium Copyright Act**

1-43     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 24 as if fully restated herein.

44.     The Digital Millennium Copyright Act "DMCA" contains three provisions targeted at the circumvention of technological protections. Section 1201(a)(1)(A) prohibits a person from "circumventing a technological measure that effectively controls access to a work protected under Title 17 [governing copyright]." 17 U.S.C. § 1201(a)(1)(A).  Section 1201(a)(2) supplements the

prohibition against the act of circumvention in paragraph (a)(1) with prohibitions on creating and making available certain technologies developed or advertised to defeat technological protections against unauthorized access to a work. Section 1201(b)(1) applies to trafficking in means of circumventing protection offered by a technological measure that effectively protects rights of a copyright owner in a work or portion thereof.

45.     Defendant's scrubbing of the copyright information falls within the prohibitions of the DMCA.

46.     Section 1202, Integrity of copyright management information, provides:

(a)     False copyright management information. No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--

(1)     provide copyright management information that is false, or

(2)     distribute or import for distribution copyright management information that is false.

(b)     Removal or alteration of copyright management information. No person shall, without the authority of the copyright owner or the law--

(1)     intentionally remove or alter any copyright management information,

(2)     distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3)     distribute, import for distribution, or publicly perform works, copies of works, or phone records, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203 [17 USCS § 1203], having reasonable

9

grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

47.     Under the DCMA definitions, "copyright management information" includes "[t]he names of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." See 17 USC 1202(C)(3).

48.     Defendants violated both sections A and B. Innova both provided false copyright management information and altered copyright management information.

49.     The damages are similar to those for violation of the Copyright act, but also include a nominal punitive damage.

Wherefore, Plaintiffs are entitled to such relief as injunctive relief, actual damages, profits gained by the illegal use of the copyright, and attorney fees and costs.

## **Count III -Lanham Act**

1-43     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 as if fully restated herein.

44.     Under the Lanham Act, section 43(a), 15 U.S.C. § 1125(a),

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

45. The Defendants have made false statements in a commercial advertisement about the ownership of the origination of and copyright of VTS Systems created by Plaintiff and protected by Plaintiff's copyright.

46. Contrary to its advertisement, Defendants are neither the creators nor the owners of the VTS Systems.

47. The Defendants have made false statements regarding the creation of the Rabin Cone test on it webpage.

48. The Defendants have made false statements regarding the claim that Innova Systems served as the sole advisor to the ANSI committee for the development of computerized vision testing standards.

49. The Defendants have made false statements regarding Plaintiffs' distribution of vision computer programs.

50. The false statements have a tendency to deceive a substantial segment of its audience.

51. The false identity of Defendant Innova as the creator and owner of the copyright is a material deception that is likely to influence the purchasing decision of the purchasing company.

52. Plaintiffs have been injured as a result advertising and will continue to be as a result of the false statements by being hindered in their ability to claim prior copyright status and the loss of goodwill associated with the products it created.

Wherefore, Plaintiffs are entitled to such relief as injunctive relief, actual damages, profits gained by the illegal use of the copyright, and attorney fees and costs.

### Count IV –Correction of Patent No.9,833,137 – Non-Joinder
### Against Cheryl Nordstrom

1-43 Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 33 as if fully restated herein.

44.     Under 35 U.S. Code § 256(b) of the America Invents Act, whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the inventor has a right to bring a claim to correct the patent.

45.     Steven Nordstrom qualifies as an inventor for the "method and apparatus for administering a low luminance visual dysfunction test", patent number US 9,833,137.

46.     Steven Nordstrom's name does not appear on the above-listed patent as an inventor.

Wherefore, Plaintiffs are entitled to such relief as allowed pursuant to 35 U.S. Code § 256 including an order from this Court to the U.S. Patent and Trademark Office to issue a certificate of correction naming Steven Nordstrom as an inventor for the "Method and Apparatus for Administering a Low Luminance Visual Dysfunction Test", patent number US 9,833,137 and all other relief he is entitled under this count.

## Count V –Correction of Patent No. 9883794 – Non-Joinder
### Against Cheryl Nordstrom

1-43.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 44 as if fully restated herein.

44.     Under 35 U.S.C § 256 of the Leahy-Smith America Invents Act, whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the inventor has a right to bring a claim to correct the patent.

45.     Steven Nordstrom qualifies as an inventor for the "Method and Apparatus for Testing for Color Vision Loss" Patent No. 9,883,794.

46.     Steven Nordstrom's name does not appear on the above-listed patent as an inventor.

Wherefore, Plaintiffs are entitled to such relief as allowed pursuant to 35 U.S. Code § 256 including an order from this Court to the U.S. Patent and Trademark Office to issue a certificate

of correction naming Steven Nordstrom as an inventor for the "method and apparatus for testing for color vision loss" Patent No. 9883794 and all other relief Steven Nordstrom is entitled under this Count.

Respectfully submitted,

By:

/s/ Kristin Tauras
One of the Attorneys for
Plaintiffs, Nordstrom Consulting, Inc.
And Steven Nordstrom

Sara Cook – ARDC # 3126995
scook@mckenna-law.com
Kristin Tauras – ARDC # 6216004
ktauras@mckenna-law.com
James Cook – ARDC# 6325582
jcook@mckenna-law.com
McKenna Storer
1004 Courtaulds Drive #A
Woodstock, IL 60098
815-334-9690\Fax: 815-334-9697

Stephen T. Scherrer – ARDC # 6256633
stephen@scherrerpatentlaw.com
Scherrer Patent & Trademark Law, P.C.
17 E. Crystal Lake Avenue
Crystal Lake, IL 60014
815-455-5685

**<u>Exhibits to Complaint</u>**

Exhibit A – Nordstrom Copyrights

Exhibit B-Nordstrom Splash Page

Exhibit C-Nordstrom with M&S Splash Page

Exhibit D- Nordstrom with Innova Splash Page

Exhibit E-Dissolution of Marriage Judgment

Exhibit F-Innova Splash Page

Exhibit G Innova Webpage

Exhibit H Innova Webpage

Exhibit I – Patent for Color Vision Loss

Exhibit J- Patent for Low Luminance Vision Testing