IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORDSTROM CONSULTING, INC. and STEVEN NORDSTROM, <br><br> Plaintiffs, <br><br> v. <br><br> INNOVA SYSTEMS, INC. and CHERYL NORDSTROM, <br><br> Defendants. | No. 18-cv-03011 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs/Counter-Defendants Nordstrom Consulting Inc. (NCI) and Steven Nordstrom (Steven) (collectively, Plaintiffs) filed this action against Defendants/Counter-Plaintiffs Innova Systems, Inc. (Innova) and Cheryl Nordstrom (Cheryl) (collectively, Defendants), who filed counterclaims against Plaintiffs. R. 69, Am. Compl.; R. 18, Counterclaim; R. 59, Am. Counterclaim. The Amended Complaint and Amended Counterclaim all relate to the use and ownership of copyright, inventorship, trademarks, and trade secrets associated with software-related visions testing products. Currently before the Court is Defendants' Renewed Motion for Leave to Amend their Counterclaim, adding Counts XI and XII for direct and indirect patent infringement. R. 98, Defs.' Sec. Mot. Leave. For the reasons stated herein, the Court denies Defendants' Renewed Motion for Leave to Amend their Counterclaim.

**Background**

This case involves a complicated procedural history, with the filing of claims, amended claims, counterclaims, and amended counterclaims all relating to alleged violations of copyrights, trademarks, and patents stemming from vision testing products software.

NCI is in the business of designing, developing, marketing and licensing software and selling complete systems for vision testing. Am. Compl. ¶ 3. Steven is the president and sole owner of NCI. *Id.* ¶ 4. Innova markets, sub-licenses, and distributes software systems for vision testing developed by NCI, as well as software systems for vision testing developed by Innova. *Id.* ¶ 5; R. 73, Answer Am. Compl. ¶ 5. Cheryl is the president and sole owner of Innova. Am. Compl. ¶ 6.

On April 27, 2018, Plaintiffs filed their Complaint against Defendants asserting copyright and trademark infringement claims, and requesting that the Court order the U.S. Patent and Trademark Office to issue a certificate of correction naming Steven as the inventor of two patents, including Patent No. 9,883,794 (794 Patent). R. 1, Compl. at 7–13. Defendants filed their Answer and Counterclaim on July 2, 2018, alleging counterclaims for copyright and trademark infringement, unfair competition, fraud, and violations of the Illinois Trade Secrets Act and Innova's Exclusive License. Counterclaim at 12–30. On June 27, 2019, Defendants were granted leave to file, R. 58,[1] and filed an Amended Counterclaim, which sought, among other relief subsequently stricken from the Amended Counterclaim, a

---

[1]This case was previously assigned to Judge Wood and was reassigned to this Court on September 28, 2020. R. 93.

declaratory judgment that Steven is not an inventor of the two patents, including the 794 Patent, Am. Counterclaim at 1–3. A month later, on July 25, 2019, the Court entered an order requiring any motions for leave to amend pleadings be filed by August 15, 2019. R. 66. Defendants did not file any motion to amend the pleadings on or before the deadline set out in the Court's order. Plaintiffs, on the other hand, filed a Motion for Leave to File an Amended Complaint Affirmative Defenses to the Amended Counterclaim on August 15, 2019, R. 67, which the Court granted, R. 68.

On May 28, 2020, approximately nine months after the deadline for amending pleadings, Defendants filed a Motion for Leave to Amend their Counterclaims. R. 88, Defs.' Mot. Leave. Defendants sought leave to add two counterclaims for direct and indirect infringement of the 794 Patent. R. 88-1, Proposed Second Am. Counterclaim. Defendants contended that allowing the amendment was in the interest of justice as it based on new information discovered in May 2020. Defs.' Mot. Leave. Plaintiffs opposed the motion, arguing that it was untimely and failed to identify what additional information Defendants have discovered or when that information was discovered. R. 100, Pls.' Resp. at 3–4.

The Court denied the motion via a Memorandum Opinion on November 6, 2020, finding that Defendants failed to demonstrate good cause for their request to amend after the scheduling order deadline as required by Federal Rule of Civil Procedure 16(b). R. 97, 11/6/2020 Opinion. The Court pointed out that Defendants failed to explain "why their failure to investigate Plaintiffs' potential infringement of the 794 Patent simultaneously when filing its June 27, 2019 declaratory judgment

related to that Patent does not equal a failure of diligence that defeats a showing of good cause under Rule 16(b)." *Id.* at 6. Because both parties only addressed Defendants' request under Rule 15(a), rather than Rule 16(b), the Court allowed Defendants to file a renewed motion explaining why they meet the more stringent Rule 16(b) good-cause standard. *Id.* at 8.

On December 4, 2020, Defendants filed another motion for leave to amend their claims. Defs.' Sec. Mot. Leave. Defendants argue that the proposed patent infringement claims are based upon factual developments that occurred well after Judge Wood's August 15, 2019 deadline for motions and amendments. *Id* at 2. Defendants explain that sometime between April and May of 2020, the United States Air Force discontinued the purchase and use of Defendants' Cone Contrast Test (CCT) product in favor of Plaintiffs' OcuTest Extended software, which, according to Defendants, uses technology disclosed in the contested 794 patent. *Id.* Defendants maintain that these late developments provide good cause for their amendment of the Counterclaim. *Id.*

Plaintiffs, not surprisingly, oppose the motion, arguing that Defendants fail to satisfy the "good-cause standard" under Rule 16(b). Plaintiffs contend that Defendants have "always known which products were being sold by" Plaintiffs, and thus "knew all the operative facts before filing their late motion to amend." Pls.' Resp. Sec. Mot. Leave at 5.

4

**Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The "thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986). Thus, the rule takes a liberal approach to allowing amendments. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015).

But Rule 16(b)(4) is more demanding, and states that a scheduling order "may be modified only for good cause." Although delay alone is rarely a sufficient reason to deny leave to amend under Rule 15(a)(2), *Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016) (citing *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)), "the primary consideration for district courts [under Rule 16(b)(4)] is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon,* 651 F.3d 715, 720 (7th Cir. 2011) (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)).

**Discussion**

The Seventh Circuit has held that, "when a motion for leave to amend is filed after the deadline for amending the pleadings has elapsed . . . the district court 'is entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (quoting *Alioto,* 651 F.3d at 719). Because Defendants' May 28, 2020 Motion for Leave to Amend their Counterclaim

5

was filed more than nine months after the court-ordered deadline to amend a pleading, Rule 16(b) applies.

Only "[i]f good cause can be established under Rule 16(b) is Rule 15(a) then applied." *Vitelo v. Brazzaz, LLC*, 2010 WL 3273898, at *2 (N.D. Ill. Aug. 16, 2010) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992)). "A party meets the good cause standard if it promptly moves to amend the pleadings after learning facts which provide the basis for the amendment." *Downing v. Abbott Lab'ys*, 2017 WL 4535973, at *4 (N.D. Ill. Oct. 11, 2017) (internal citation omitted).

So the first question before the Court is whether Defendants obtained new information after the August 2019 scheduling order deadline that provided Defendants a basis for the new patent infringement counterclaims.

Defendants argue that the Air Force's April 2020 policy change and subsequent decision to exclusively purchase Plaintiffs' OccuTest product constituted new information providing a basis for new patent infringement claims. Defs.' Sec. Mot. Leave at 2. Defendants proffer the Declaration of Cheryl in support of the motion. R. 93-3, Cheryl Decl. According to Cheryl, she became aware in May 2020 that the United States Airforce had changed the US Airforce Waiver Guide to specifically list Innova's CCT as an unapproved device, while recognizing NCI's CCT test as the only approved device. *Id.* ¶ 3. NCI's CCT is the product, attests Cheryl, at the heart of the patent infringement in the proposed counterclaims. *Id.* ¶ 4.

In response, Plaintiffs retort that Defendants knew the 794 Patent was at issue when the original Complaint was filed in April 2018.² Pls.' Resp. Sec. Mot. Leave at 4. Indeed, Paragraph 9 of Plaintiffs' original Complaint alleges that Defendants improperly removed Plaintiffs' name from unregistered technology used by the U.S. military, and this was both referenced and responded to in Defendant's counterclaim. *Id.* at 5 (citing Compl. ¶ 9). Moreover, Plaintiffs point to the photos of its OccuTest product advertisements produced by Defendants during discovery in January 2019 as further evidence that Defendants have "always known which products were being sold" by Plaintiffs. *Id.* at 2; *id.* Exh. A. In reply, Defendants contend that the original Complaint involved *copyright* infringement rather than *patent* infringement and Defendants' counterclaims filed on June 29, 2019 addressed only *inventorship*, not *infringement*. R. 101, Defs.' Reply Sec. Mot. Leave at 3 (citing Am. Counterclaim). Defendants do not directly address the photos of Plaintiffs' OccuTest advertisements in reply, but argue that it matters not when Defendnats knew that Plaintiffs were *developing* the allegedly infringing products, since "development" of a product does not support a patent infringement claim. *Id.* at 2.

Direct patent infringement occurs when a party without authority "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C.A. § 271(a). Further, "whoever actively induces infringement of a patent

---

²Plaintiffs' Response states that the original Complaint was filed in April 2020, and later April 2019. Pls.' Resp. Sec. Mot. Leave at 4. In the same paragraph, however, the Response cites to R. 1, the original Complaint filed in April 2018. The Court therefore interprets the 2019 and 2020 dates in the Response as scrivener's errors.

shall be liable as an infringer." 35 U.S.C.A. § 271(b). However, an act of direct infringement is required to find inducement, and thus indirect infringement. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009).

The Court agrees with Defendants that a dispute about patent inventorship does not necessarily implicate patent infringement, *see e.g.*, *Sage Prod., Inc. v. Am. Nonwovens Corp.*, 2004 WL 1080192, at *2 (N.D. Ill. May 13, 2004), and also that patent infringement and copyright infringement are distinct causes of action, *see Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 931 (7th Cir. 2003). However, based on the evidence presented by Plaintiffs—which Defendants fail to address—the Court finds that Defendants knew about Defendants' alleged patent infringement as early as July 1, 2019 (and potentially as early as January 31, 2019 when photographs were produced). Defendants claim in their Reply that "Patent infringement was never discussed at [a] settlement conference [held in July 2019]. Rather, the only kind of infringement that was discussed was copyright infringement." Defs.' Reply Sec. Mot. Leave at 4. However, Plaintiffs requested and were granted leave to file a Sur-Response, in which they contest Defendants' statement, and claim that "Defendants' threat of filing a patent infringement was expressed during the settlement conference and is referenced throughout the Defendants' Settlement Letter submitted to the magistrate on July 1, 2019 in support of a Mediation that took place in July of 2019."[3] R. 102, Pls.' Sur-Resp. Sec. Mot.

---

[3]Federal Rule of Evidence 408 states that evidence of "conduct or a statement made during compromise negotiations about the claim" is inadmissible if used "to prove or disprove the validity or amount of a disputed claim." FED. R. EVID. 408(a)(2). But the Rule adds that the Court "may admit this evidence for another purpose," *id.*, such as "to show knowledge and

8

Leave at 1; R. 103, 1/28/2021 Order. In granting Plaintiffs' request for leave to file a sur-response, the Court allowed Defendants to file a sur-reply (1/28/2021 Order) but Defendants did not file one.

Plaintiffs, in response to a subsequent Court order (R. 115), filed Defendants' July 1, 2019 settlement letter, which clearly indicates that Defendants were aware of Plaintiffs' alleged patent infringement at that time; in fact, Defendants threatened to file patent infringement claims. R. 116, Exh. A, Defs.' Settl. Letter at 1 ("Defendant has information and belief that Plaintiff is infringing United States Patents owned by Defendant."); *id.* at 10–11 ("Moreover, upon information and belief, Plaintiff, Steven Nordstrom, is intentionally and willfully infringing one or both of these patents by making and selling products which include each and every elements of at least one claim in the patent(s). The extent of this infringement is unknown at this time, but Defendant is preparing to commence a separate lawsuit for this intentional patent infringement."). These statements in the settlement letter, combined with the photos of Plaintiffs' OccuTest product advertisements produced by Defendants, establish that Defendants were aware of potential claims for patent infringement as of July 1, 2019, before the August 15, 2019 deadline to file amended pleadings.[4]

---

intent," *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005). Consideration of Defendants' letter falls squarely within the "knowledge" exception to Rule 408, and the Court can consider the information therein as it pertains to Defendants' knowledge of potential patent infringement counterclaims in July 2019.

[4] Based on the evidence before the Court, the Court cannot definitively conclude that Defendants' statement that only "copyright infringement" was discussed at the settlement conference was a misrepresentation, since Defendants do not explicitly state in their filings that the settlement *letter* submitted in advance of the conference did not include information about potential patent infringement claims. *See* Reply Sec. Mot. Leave at 4. However, the

9

The next question before the Court is whether Defendants acted diligently to amend their Counterclaim upon learning new and relevant information. Courts have held that even if a party does not possess the relevant information before the amendment deadline, a party who sits on that information for months "before seeking leave to amend lacks diligence to establish good cause." *Downing*, 2017 WL 4535973, at *4 (denying leave to amend complaint where plaintiff waited ten months to move to amend after receiving the information); *Vitelo*, 2010 WL 3273898, at *3 (plaintiff failed to show good cause where he waited more than six months to amend after receiving relevant information). Given that the Court has found that Defendants possessed information about Plaintiffs' alleged patent infringement on July 1, 2019, but did not file a Motion for Leave to Amend until May 28, 2020—nearly 11 months later—the Court cannot say that Defendants acted diligently. The Court finds that Defendants have not shown good cause for the delay.[5] Because Defendants do not satisfy Rule 16(b)'s good-cause standard, the Court need not evaluate whether Rule 15(a)'s requirements are satisfied. *Adams*, 742 F.3d at 734.

---

Court reminds Defendants that making material misrepresentations in filings to the Court may subject them to sanctions under Federal Rule of Civil Procedure 11(b).

[5]The Court finds Defendants' argument that they could not file patent infringement claims without experienced patent counsel (Reply Sec. Mot. Leave at 3–4) unpersuasive: Defendants' "patent counsel" did not file her appearance until October 2020 (R. 96) five months after Defendants' first Motion for Leave to Amend was filed in May 2020 (Defs.' Mot. Leave).

## Conclusion

For the reasons stated above, the Court denies Defendants' Second Motion for Leave to Amend their Counterclaim [98].

Date: August 26, 2021

United States District Judge
Franklin U. Valderrama