IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORDSTROM CONSULTING, INC.; STEVEN NORDSTROM<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>INNOVA SYSTEMS, INC.; an Illinois Corporation CHERYL NORDSTROM, individually<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 1:18-cv-03011<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. PROC. 50(A)

Defendants Innova Systems, Inc. and Cheryl Nordstrom submit the following Motion and Memorandum in support of Defendants' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. Proc. 50(a) on all of Plaintiffs' claims against Defendants, an award of attorney fees and costs to Defendants and for such other and further relief as the Court deems just and proper. As set forth below, Plaintiffs have failed to come forward with a legally sufficient evidentiary basis from which a reasonable jury could find judgment for Plaintiffs on any of Plaintiffs' claims. The facts set forth herein are derived from the evidence presented during Plaintiffs' case in chief.

Under Rule 50(a), a court may resolve an issue against a party if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Conversely, to deny a Rule 50(a) motion, the court must find that the non-moving party presented enough evidence that a reasonable jury could find in its favor. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003).

As an initial matter Cheryl Nordstrom is entitled to judgment on all claims against her in her individual capacity. Defendant Cheryl Nordstrom should be granted as a matter of law because all of the acts complained of by Plaintiffs were undertaken by Innova and not Cheryl Nordstrom. See *TABFG, LLC v. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014) where the Court held: "Illinois has therefore granted a conditional privilege to managers or corporate officers that protects them from personal liability for their decisions made on behalf of the corporation. *Id.; Nation v. American Capital, Ltd.,* 682 F.3d 648, 651–52 (7th Cir.2012); *Stafford,* 63 F.3d at 1442." Plaintiffs have not set forth legally sufficient evidence that Cheryl Nordstrom acted independently from Innova and in her personal capacity. Moreover, Plaintiffs have not pleaded that Innova's corporate veil should be pierced. Plaintiffs' claim that Cheryl Nordstrom is personally liable fails as a matter of law. Plaintiffs have not submitted legally sufficient evidence such that a reasonable jury could find that Innova's corporate veil should be pierced.

Cheryl Nordstrom is also entitled to judgment as a matter of law for the reasons set forth in the sections below.

### I. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COUNT I.

Plaintiffs' Count I alleges copyright infringement against Defendants. Plaintiffs' Count I fails as a matter of law. The elements of copyright infringement are: (1) ownership of a valid copyright and (2) copying of constituent original elements. DE 69, ¶45. See *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (quoting *Feist Publications, Inc. v. Rural Telephone Services Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

The Supreme Court held: "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

To prove that a work has been copied, "the plaintiff [ ] must establish specifically that the allegedly infringing work is substantially similar to the plaintiff's work with regard to its protected elements." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir.2000). Plaintiffs have not submitted legally sufficient evidence that any allegedly infringing work by Defendants is substantially similar to the Plaintiffs' work with regard to its protected elements.

Failure to submit the source code is fatal to Plaintiffs' copyright infringement action: "When, as in this case, the copyrighted work is a computer program, the filtering process entails an examination of source code. This is where Mr. Mohr hits an evidentiary roadblock that he cannot surmount because, as noted earlier, he cannot produce a copy of AMIP's source code as it existed when he registered the 2010 AMIP program with the U.S. Copyright Office. (Doc. 75-10, pp. 40–41)…Therefore, the Court must conclude that Mr. Mohr is unable to produce the copyrighted work, and the Court cannot conduct an infringement analysis. *Mohr v. Sci. & Eng'g Servs., Inc.*, 204 F. Supp. 3d 1281, 1298 (N.D. Ala. 2016). See also *Haddley v. Next Chapter Tech., Inc.*, No. CV 16-1960 (DWF/LIB), 2019 WL 979151, at *7 (D. Minn. Feb. 28, 2019)("Here, Plaintiff's copyright claim in Count II is based on 2007 source code, a complete copy of which Plaintiff has not produced. Without such a copy, there can be no meaningful comparison or analysis of the asserted copyrighted work against what Plaintiff claims to be infringing work.") Plaintiffs have not admitted evidence of the source code for any of the copyrights.

See *InDyne, Inc. v. Abacus Tech. Corp.*, 587 Fed.Appx. 552, 554 (11th Cir.2014) (affirming an award of attorney's fees to a defendant made by the district court to "deter future litigants from suing for infringement of software copyrights without being able to produce the software code").

3

Plaintiffs have not come forward legally sufficient evidence that either Plaintiff has a registered copyright or that either Defendant copied any constituent original elements or that Cheryl Nordstrom acted in her individual capacity rather than as Innova.

In *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105–06 (1st Cir. 2011), the Court held:

> To establish actionable copying for the purposes of copyright infringement, the plaintiff must prove both: "(a) that the defendant actually copied the work as a factual matter," and "(b) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar.' " *Situation Mgmt.,* 560 F.3d at 58 (quoting *T–Peg, Inc. v. Vt. Timber Works, Inc.,* 459 F.3d 97, 108 (1st Cir.2006)) (internal quotation marks omitted). Proof of "[b]oth species of copying [is] essential for the plaintiff to prevail." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01[B], at 13–10 (2011)."
> Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105–06 (1st Cir. 2011)

The Court went on to hold:

> The Fifth Circuit addressed a similar situation in *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572 (5th Cir.2003), which like the present case involved computer source code. Because the plaintiff had offered no admissible evidence that could prove the content of his copyrighted source code, the district court found the evidence "insufficient to create a genuine issue of material fact as to whether [the copyrighted and accused programs] are 'substantially similar.' " *Id.* at 576. **The Fifth Circuit affirmed, holding that the plaintiff's "failure to adduce evidence to allow a comparison between the [copyrighted source code] and the allegedly infringing program vitiates his claim."** *Id.* at 577. The plaintiff's failure to produce sufficient evidence to prove the element of "substantial similarity" was fatal to his infringement claim, even though there may have been "evidence of direct copying.
> *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 107 (1st Cir. 2011) (emphasis added.)

Steven Nordstrom testified that he continually updated the software code. However, not only is there no legally sufficient evidence of what software code was registered, Plaintiffs have failed to submit legally sufficient evidence that a work of Innova or Cheryl Nordstrom was copied.

See *Oliver v. Johanson*, 357 F. Supp. 3d 758, 785 (W.D. Ark. 2018) where the Court held:

4

The evidence supports the grant of an implied nonexclusive license. It cannot be disputed that Oliver was retained to create and deliver software programs, initially to the Johansons for internal use in their consulting business, and later on behalf of DB Squared for commercial sale to outside clients. He certainly did so. Thus, whether he granted an implied license depends upon whether "the creator intended that the licensee would copy and make use of the work." The evidence supports Defendants' argument that Oliver intended that Defendants could continue to make use of the software programs. Indeed, from his initial hiring in 2001 until his resignation in 2016, the evidence shows that Oliver intended that his work would be used, copied, and distributed. In fact, the testimony shows that Oliver often personally went to install versions of the software on clients' computers and attended trade shows advertising the product, all on behalf of DB Squared. He also inserted copyright notices in favor of the company into the code and programmed the software to prompt users having software issues to contact DB Squared. Even his resignation email noted that he was confident that DB Squared could successfully finish the roll-out of the newly created DB Compo 10 program. Thus, the Court finds that the greater weight of the evidence demonstrates that Oliver's conduct indicates an intent on his part for Defendants to be able to use the software programs he created, notwithstanding his ownership to the underlying copyright in those works. *Gagnon*, 542 F.3d at 757 (finding an unlimited implied license where "Gagnon delivered the software without any caveats or limitations on AMS's use of the programs ... [and] programmed on-site at AMS on AMS computers to which key AMS personnel had access). Thus, considering the totality of the circumstances, the Court finds that Oliver's conduct throughout the duration of his relationship with Defendants supports the grant of an implied nonexclusive license to continue using the software.

Steven Nordstrom testified that Innova was allowed to sell a license in all NCI visual acuity tests for which Plaintiffs held a copyright registration. Plaintiffs have not submitted legally sufficient evidence of copyright infringement including, but not limited to:

A. Plaintiffs have not submitted the computer code for the copyrights.
B. Plaintiffs have testified that he has no idea about Innova's products since 2013.
C. There is no proof that Innova or Cheryl Nordstrom copied protected expression.
D. Innova has a license on NCI's and Steven's visual acuity copyrights. DTX 3.
E. There is no proof that Innova's software code and the NCI software code are so similar that a reasonable person would conclude Innova took protected expression from Plaintiffs' work. There is no proof of Innova's software code after 2015 at all. Steven Nordstrom testified he did not know Innova's software code for any time from 2015 and earlier.
F. Even if there was copying, Innova had authority to copy plaintiffs' work. DTX 3

G. Plaintiffs are barred from claiming copyright infringement under the doctrine of equitable estoppel as Plaintiffs induced Innova's reliance on the software product and rescinding said allowance would cause irreparable injury to business and reputation.
H. Plaintiffs are barred from asserting a claim of copyright infringement under the doctrine of waiver because Plaintiffs abandoned their claim of ownership in previously developed works by knowingly incorporating them into subsequent work owned exclusively by Innova.
I. Plaintiffs are barred from asserting a claim of copyright infringement because of Plaintiffs' failure to object to Defendants' use, demonstration, sale, service, support, or creation of works containing segments of Steven Nordstrom's pre-existing, inactive code developed by Steven constitutes implied consent to utilize, market, and sell products allegedly containing segments of the pre-existing code to which Steven Nordstrom claims ownership;
J. Plaintiffs' claims of copyright infringement are time-barred by the statute of limitations set forth in 17 U.S.C. § 507(b) for failure to commence an action under the Copyright Act within three years of claim accrual. Sale of any software systems containing code previously developed by Steven Nordstrom after September 20, 2013 cannot be infringing under the court-ordered license in the divorce case. If allegedly infringing activity occurred before September 20, 2013, those claims are time-barred;
K. Defendants' alleged copyright violation is protectable as fair use under 17 U.S.C. § 107;
L. Plaintiffs' claims are barred by Plaintiffs' unclean hands; and
M. If Defendants copied any copyright belonging to Plaintiffs, that copying is a *de minimis* use of said works, and includes only functional aspects and no original expression of Plaintiffs.

Plaintiffs' Count I fails as a matter of law. Plaintiffs have not submitted legally sufficient evidence such that a reasonable jury could find that any of the constituent elements of copyright infringement were met. Therefore, Defendants request that the Court enter judgment as a matter of law in favor of both Innova and Cheryl Nordstrom on Plaintiffs' Count I.

    **II.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COUNT II ALLEGING A VIOLATION OF THE DMCA.**

17 U.S.C. § 1202(a) prohibits **knowingly** providing false copyright management information (CMI) **with the intent to induce, enable, facilitate, or conceal infringement**. Section 1202(b) prohibits intentionally removing or altering CMI without authority, where the

defendant knows, or has reasonable grounds **to know, that doing so will induce, enable, facilitate, or conceal infringement**. To prevail, a plaintiff must establish (1) falsity or removal/alteration of CMI, (2) knowledge of that falsity or alteration, and (3) the requisite intent. *See* 17 U.S.C. § 1202(a)–(b). Judgment as a Matter of Law should be granted in favor of Defendant Cheryl Nordstrom because Plaintiffs have not submitted legally sufficient evidence that Defendant Cheryl Nordstrom committed any act in her personal rather than corporate capacity. Plaintiffs have not submitted legally sufficient evidence that either Defendant **knowingly** provided false copyright management. Plaintiffs have not submitted legally sufficient evidence that either Cheryl or Innova intended to induce, enable, facilitate, or conceal copyright infringement. Plaintiffs have not submitted legally sufficient evidence that either Cheryl or Innova **intentionally** removed or altered CMI without authority, or that either Defendant knew, or had reasonable grounds **to know, that doing so will induce, enable, facilitate, or conceal infringement**. Cheryl testified that the copyright date on the splash screen was a typographical error. Cheryl testified that she did not code or write the splash screen and that she had not seen the splash screen (PTX 56) until after the lawsuit was filed. There is no proof that either Cheryl or Innova acted with the requisite knowledge or intent. Cheryl testified that John Krsek coded and wrote the splash screen.

    As stated above under the copyright infringement section, Plaintiffs did not submit legally sufficient evidence that either Cheryl or Innova committed copyright infringement and since neither Defendant committed copyright infringement, there would be no reason for either Defendant to know that their actions would induce, enable, facilitate or conceal infringement.

    Pursuant to 17 U.S.C. §401, notice of copyright is not required for works developed on or after March 1, 1989. Further, Plaintiffs' placement of the copyright notice on the splash screen

7

does not constitute placement "in such a manner as to give reasonable notice of the claim of copyright," pursuant to 17 U.S.C. §401(c), as Plaintiffs have not proven that any potential customer ever witnessed the startup sequence. Steven was not aware of any customer who saw the splash screen. Rather, he testified that it was he who saw the splash screen.

Plaintiffs have not submitted legally sufficient evidence that either Cheryl or Innova violated the DMCA:

1. Plaintiffs have not submitted sufficient evidence that Cheryl Nordstrom personally provided, distributed, or imported for distribution CMI that was false and that such activity was done knowingly;
2. Plaintiffs have not submitted sufficient evidence that Cheryl Nordstrom personally acted with the intent to induce, enable, facilitate, or conceal infringement.
3. Plaintiffs have not submitted sufficient evidence that Cheryl Nordstrom personally committed copyright infringement.
4. Plaintiffs have not submitted sufficient evidence that Innova as a corporation provided, distributed, or imported for distribution CMI that was false and that such activity was done knowingly;
5. Plaintiffs have not submitted sufficient evidence that Innova acted with the intent to induce, enable, facilitate, or conceal infringement.
6. Plaintiffs have not submitted sufficient evidence that Innova committed copyright infringement.

Plaintiffs' Count II fails as a matter of law. Plaintiffs have not submitted legally sufficient evidence such that a reasonable jury could find that any of the constituent elements of violation of the DMCA were met. Therefore, Defendants request that the Court enter judgment as a matter of law in favor of both Innova and Cheryl Nordstrom on Plaintiffs' Count II.

### III. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COUNT III ALLEGING FALSE ADVERTISING UNDER THE LANHAM ACT.

"To prevail on a deceptive-advertising claim under the Lanham Act, plaintiff must establish that (1) the defendant made a material false statement of fact in a commercial

advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018). Plaintiffs' claim fails as a matter of law.

Plaintiffs have not submitted legally sufficient evidence that either Cheryl Nordstrom or Innova:

1. made a false or misleading statement of fact **in a commercial advertisement** about the origin and copyright ownership related to its own product. A statement is misleading if it conveys a false impression and actually misleads a consumer.
2. That said false statement **actually misleads** a customer.
3. That the deception was likely to influence the purchasing decisions of consumers.
4. That either Defendant caused the false statement to enter interstate commerce.
5. That either Plaintiff has been or is likely to be injured as a result of the false statement.

Plaintiffs have not submitted legally sufficient evidence that: the splash screen (PTX 56) was a commercial advertisement, that any statement in the splash screen actually misled a consumer, that the alleged deception was likely to influence the purchasing decisions of consumers or that NCI or Steven Nordstrom were or had been injured as a result of the false statement. There is no legally sufficient evidence that the splash screen admitted into evidence (PTX 56) was seen by any customer at all or that it actually misled a customer. Both Steven Nordstrom and Cheryl Nordstrom testified that the software was already open at trade shows. Steven Nordstrom testified that it was he who saw the splash screen and there is evidence that any customer saw it. Thus, there is no legally sufficient evidence that any consumer would have seen the splash screen to influence its purchasing decision. There is not legally sufficient evidence that the splash screen is a commercial advertisement. Steven Nordstrom testified that it

9

was to show that a user that the program was opening. There is no legally sufficient evidence of any other alleged false advertising except for the splash screen admitted into evidence (PTX 56).

Plaintiffs' Count III fails as a matter of law. Plaintiffs have not submitted legally sufficient evidence such that a reasonable jury could find that any of the constituent elements of violation of the Lanham Act for false advertising were met. Therefore, Defendants request that the Court enter judgment as a matter of law in favor of both Innova and Cheryl Nordstrom on Plaintiffs' Count III.

### IV. CHERYL NORDSTROM IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COUNT V ALLEGING NON-JOINDER.

Steven must prove conception by clear and convincing evidence. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). The Federal Circuit held:

> **The burden of proving that an individual should have been added as an inventor to an issued patent is a "heavy one**," *Pannu v. Iolab Corp.*, 155 F.3d 1344,1349 (Fed. Cir. 1998) (quoting *Garrett Corp. v. United States*, 422 F.2d 874, 880, 190 Ct. Cl. 858 (Ct. Cl. 1970)), and "the issuance of a patent creates a presumption that the named inventors are the true and only inventors," *Gen. Elec. Co.*, 750 F.3d at 1329.
> *HIP, Inc. v. Hormel Foods Corp.*, 66 F.4th 1346, 1350 (Fed. Cir. 2023). (emphasis added.)

Because "[c]onception is the touchstone of inventorship," *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994), "a joint inventor must contribute to the invention's conception," *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019)." *Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1005–06 (Fed. Cir. 2019).

Oral testimony of the alleged co-inventor on its own will not suffice as clear and convincing evidence of joint inventorship. *Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993). It is Steven's burden to set forth enough evidence of conception to corroborate his claim of joint inventorship. In *Wagner v. Ashline*, No. 2021-1715, 2021 U.S. App. LEXIS 34093, *10

(Fed. Cir. Nov. 17, 2021), the Federal Circuit affirmed the district court's grant of summary judgment to the defendant, finding that, as a matter of law, the alleged co-inventor did not provide enough evidence of corroboration. See also *Stern v. Trs. Of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006)(granting summary judgment because alleged joint inventor's evidence was "insufficient to corroborate [a] claim of co-inventorship")."Determining 'inventorship' is nothing more than determining who **conceived** the subject "matter at issue[]...." *James v. j2 Cloud Servs., LLC*, 823 F. App'x 945, 949 (Fed. Cir. 2020), quoting *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). (emphasis added.) **<u>A person who merely works on an invention's reduction to practice without having conceived the idea for the invention, is not a rightful inventor</u>**. *Sewall*, 21 F.3d 411 (emphasis added).

None of Steven's purported proof shows evidence of conception, merely that he worked on the software code and contributed to reduction to practice. See *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1296 (Fed. Cir. 2008)(affirming summary judgment on inventorship holding the evidence did "not establish that [the alleged co-inventor] contributed to the idea." *Symantec Corp.*, 522 F.3d at 1296. See also *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004)("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception").

The US Air Force had been developing a cone contrast test for many years and developed a working prototype of it prior to even meeting Cheryl, Steve or Innova. Steven has failed to articulate or prove his inventive contribution to conception. The claims of the '794 Patent do not require the invention to have a specific software design or be coded in any specific computer language.

In the present case, it is undisputed that Steven wrote some of the software code that reduced to practice the invention disclosed in the '794 Patent. But that is irrelevant. See *Kim v. Kettell*, 694 F. Supp. 3d 1379, 1393 (D. Colo. 2023)("In contrast, actual reduction to practice consists of constructing an embodiment that meets all the limitations of a claim. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998); see also MPEP § 2109 (9th ed. Rev. Feb. 2023) ("Insofar as defining an inventor is concerned, reduction to practice, per se, is irrelevant.")."

Steven Nordstrom has failed to submit legally sufficient evidence establishing corroboration. The Federal Circuit held in an inventorship software case in *Tavory v. NTP, Inc.*, 297 F. App'x 976, 980 (Fed. Cir. 2008), as follows:

> We also conclude that Tavory failed to provide sufficient corroborating evidence that he conceived of the interface switch. **It is undisputed that he wrote the source code** appended to the eventual patent application as an embodiment of the interface switch. **Thus, he clearly contributed significantly to the reduction of the claimed invention to practice by reducing the interface switch to practice. However, he must prove conception of the interface switch to be a co-inventor,** and thus he must demonstrate that he made a contemporaneous enabling disclosure. See *Burroughs*, 40 F.3d at 1228. He indisputably lacks any contemporaneous documents evidencing such a disclosure and relies instead on the testimony and declarations of various witnesses.
>
> **We conclude that Tavory failed to demonstrate that his activities relating to the interface switch involved anything more than just the exercise of ordinary skill**. … Tavory has not established that the interface switch itself was not in the prior art. An invention may be novel and non-obvious as a whole and yet be a combination of elements that are all individually well-known in the prior art by skilled artisans.
>
> Tavory does, in a single sentence, aver that "the interface switch is not prior art," but he relies solely on the declaration of a patent attorney who is not a person of ordinary skill in the art.[4] *See* Appellant's Br. at 6 (citing J.A. at 964–66). While he proffered the declaration of a technical expert to the district court, that expert only discusses why the interface switch is the most important component of the claimed invention and never states that it is novel or non-obvious. **Therefore, because Tavory has not provided any competent evidence that his alleged contribution to the claimed invention—the interface switch—was the result of anything more than the exercise of ordinary skill in the art, he has failed to establish co-inventorship.**

12

*Tavory v. NTP, Inc.*, 297 F. App'x 976, 980 (Fed. Cir. 2008). (emphasis added.)

Steven Nordstrom has failed to proffer legally sufficient evidence that he did anything more than contribute to the reduction to practice. Steven Nordstrom claim of contribution of calibration is not legally sufficient evidence because calibration and a cone contrast test was well known in the prior art as evidenced by, among things, the CRADA (DTX 1), the '794 Patent, the prior art and the patent applications and articles (see, e.g., PTX 1-6, and DTX 39, 49, and 52). Steven Nordstrom has not proffered legally sufficient evidence that he had a contemporaneous enabling disclosure of his alleged conception. There is no corroborating evidence that Steven Nordstrom conceived of any claim of the '794 Patent. The claims of the '794 Patent do not require any specific software design or coding language.

Furthermore, the inventor must "make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Hip, Inc. v. Hormel Foods Corp.*, 66 F.4th 1346, 1351–52 (Fed. Cir. 2023). Steven Nordstrom has not submitted legally sufficient evidence that his alleged contribution to the invention was not insignificant in quality when measured against the dimension of the full invention, when this Court and the PTO has established that the novel aspect of the invention is the progression calculation and the graph in independent claim 1 (g) and (h) of the '794 Patent.

Conception is complete when "only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Bd. of Educ. ex rel. Bd. of Trs. of Fla. State Univ. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003) (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Steven Nordstrom has not submitted legally sufficient evidence that anything more than ordinary skill in the art was needed to reduce the invention to practice.

Because "**one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention**," *Ethicon*, 135 F.3d at 1460, contributions Dr. Freeman and Dr. Wood made before the date of conception are determinative of the joint inventorship analysis, see, e.g., *Gen. Elec. Co. v. Wilkins*, 750 F.3d 1324, 1332 (Fed. Cir. 2014) (**finding no joint inventorship where the named inventors "had already conceived of their [invention] before corresponding with" the putative co-inventor**). *Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 379 F. Supp. 3d 53, 88 (D. Mass. 2019), *aff'd*, 964 F.3d 1365 (Fed. Cir. 2020).

As set forth above, the evidence shows that Steven Nordstrom's alleged contribution to conception (calibration) was already known prior to Steven Nordstrom alleged contribution to conception. A computerized method with a calibration was already part of the prior art as shown in the CRADA (DTX 1) and in the prior art, such as Carda and Sachtler as shown in DTX 49. All Steven Nordstrom did was employ ordinary skill in the art to assist in the reduction to practice of the invention. Steven Nordstrom may have worked hard and for long hours writing code, but that does not equate to conception. Steven's evidence that the language between several patent applications where he was listed as an inventor and the language in the '794 Patent are substantially identical is not relevant. The claims control for inventorship, not inventorship. Moreover, Claim 1 in the '794 Patent has different claim elements than the claims in the patent applications in the '794 Patent family.

In *Eli Lilly &amp; Co. v. Aradigm Corp.*, 376 F.3d 1352, 1364 (Fed. Cir. 2004), the Court held: "**Without any direct evidence of communication of conception**, Lilly relies largely on circumstantial evidence. … We disagree. While circumstantial evidence may in some cases be sufficient to surmount the clear and convincing evidence burden of proof, we conclude that the circumstantial evidence presented here is insufficient and that the jury's verdict cannot stand." (emphasis added.) Steven Nordstrom has not submitted any direct evidence of his

14

communication of conception. He relies on being named in other patent applications which had different claims and for which the PTO found that was included in the prior art.

The Federal Circuit held:

On the other hand, one does not qualify as a joint inventor **by merely assisting the actual inventor after conception of the claimed invention.** *See Sewall,* 21 F.3d at 416–17; *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed.Cir.1985) ("**An inventor 'may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent**.' " (quoting *Hobbs v. U.S. Atomic Energy Comm'n.,* 451 F.2d 849, 864, 171 USPQ 713, 724 (5th Cir.1971))).

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

The Federal Circuit held:
Here, Borg Indak asserts that Benson contributed the extender for a lumbar support adjustor. However, the contribution of the extender is insignificant when measured against the full dimension of the invention of claim 11, **not just because it was in the prior art, but because it was part of existing automobile seats, and therefore including it as part of the claimed invention was merely the basic exercise of ordinary skill in the art**. See *Fina Oil,* 123 F.3d at 1473 ("The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, also does not make one a joint inventor. Therefore, a person will not be a co-inventor if he or she does no more than explain to the real inventors concepts that are well known and the current state of the art." (citations omitted)); see also Eli Lilly, 376 F.3d at 1362 ("**A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception.**").
*Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1357 (Fed. Cir. 2009)

Here, Steven Nordstrom's argues he conceived of the calibration portion of Claim 6. However, as stated above, calibration was already in the prior art and the USAF prototype. Any inference or statement by Plaintiffs' expert, Nicholas Godici, to the contrary is wrong on the law and is confusing to the jury.

Plaintiffs may not rely on the preamble as a claim limitation because that theory has not been argued by Plaintiffs and it has been waived. See, e.g., PTX 65. Moreover, Plaintiffs never requested claim construction of the preamble and never argued that it is limiting. Caselaw is clear that the preamble is generally not limiting except in certain circumstances not present here.

> In *Catalina,* we identified several guideposts to aid in determining whether a preamble should be given limiting weight. For example, "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." *Id.* **Absent clear reliance on the preamble in the prosecution history, or in situations where it is necessary to provide antecedent basis for the body of the claim, the preamble "generally is not limiting**." *Id.* at 809. Thus, in general, the purpose of a claim preamble is to give context for what is being described in the body of the claim; if it is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a rejection), we do not construe it to be a separate limitation.
> *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1288–89 (Fed. Cir. 2008).

Plaintiffs' Count V fails as a matter of law. Plaintiffs have not submitted legally sufficient evidence such that a reasonable jury could find by clear and convincing evidence that Steven Nordstrom sustained his burden to prove he should be listed as an inventor of the '794 Patent. Therefore, Defendants request that the Court enter judgment as a matter of law in favor of both Innova and Cheryl Nordstrom on Plaintiffs' Count V.

## CONCLUSION

Consequently, Defendants respectfully request that the Court grant Defendants' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. Proc. 50(a), enter judgment in favor of Cheryl Nordstrom and Innova, an award of attorney fees and costs to Defendants and for such other and further relief as may be just and equitable.

DATED: February 5, 2026                             Respectfully submitted,

/s/ Jennifer L. Friedman
Jennifer L. Friedman
Admitted *pro hac vice*
Law Offices of Jennifer L. Friedman, PLLC
5406 Broadway, No. 518
Lancaster, NY 14086
Phone: 716-601-9045
jenfriedman@jfriedmanlaw.com

Kristy A. Pardo

16

        Croke Fairchild Duarte & Beres
191 N. Wacker Dr., 31st Floor
Chicago, Illinois 60606
Telephone: 312-641-0881
Cell Phone: 845-453-6310
KPardo@crokefairchild.com

*Attorneys for Innova Systems, Inc. and Cheryl Nordstrom*

TO:      Raymond P. Niro, Jr.
Raymond P. Niro Law, LLC
155 N. Wacker Dr., Suite 4250
Chicago, IL 60606
Phone: 312-755-8575
Fax: 312-674-7481
rpn@nirolawfirm.com

Kristin Tauras – ARDC # 6216004
McKenna Storer
1004 Courtaulds Drive #A
Woodstock, IL 60098
Phone: 815-334-9690
Fax: 815-334-9697
ktauras@mckenna-law.com

*Attorneys for Plaintiffs, Nordstrom Consulting, Inc. and Steven Nordstrom*