**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS EASTERN
DIVISION**

| | |
|---|---|
| NORDSTROM CONSULTING, INC.;<br>STEVEN NORDSTROM,<br><br>      Plaintiffs,<br><br>      v.<br><br>INNOVA SYSTEMS, INC.; an Illinois<br>Corporation; CHERYL NORDSTROM,<br>individually,<br><br>      Defendants. | Case No. 1:18-cv-03011<br><br>Honorable Franklin U. Valderrama<br>Magistrate Judge Jeffrey Cole |

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON
DEFENDANTS' COUNT IX, VII, AND X**

## I.    INTRODUCTION

Plaintiffs Nordstrom Consulting, Inc. and Steven Nordstrom (collectively "NCI"), pursuant to Rules 50(b) and 60 of the Federal Rules of Civil Procedure, hereby renew their motion for judgment as a matter of law on Defendants' Count IX (trademark infringement under federal law), Count VII (trade name infringement), and Count X (common law trademark infringement).

NCI is entitled to judgment as a matter of law because Defendants failed to present sufficient evidence to satisfy the legal requirements of likelihood of confusion for both of their alleged marks, "Rabin Cone Contrast Test" and "Innova." In addition, for the alleged RCCT mark, Defendants failed to present sufficient evidence of protectability. For these separate and independent reasons, NCI is entitled to judgment as a matter of law.

## II.    ARGUMENT

Under Federal Rule of Civil Procedure 50(b), "the movant may file a renewed motion for

judgment as a matter of law      ” FED. R. CIV. P. 50(b). “The standard for granting judgment as a matter of law “mirrors” the standard for granting summary judgment.” *Beverly v. Abbott Labs.*, 107 F.4th 737, 748 (7th Cir. 2024). A court “examines the record as a whole to determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury verdict[.]” *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859, 863 (7th Cir. 2007) (affirming Rule 50 grant). “A mere scintilla of evidence supporting the jury’s verdict will not suffice.” *Id.*; *see also, e.g., Perfetti v. First Nat’l Bank*, 950 F.2d 449, 452 (7th Cir. 1991) (vacating jury award where the plaintiff “presented almost exclusively indirect evidence” and “even that evidence was insubstantial” to sustain claim). Nor can a jury verdict rest on speculation or conjecture. *See, e.g., Garrett v. Barnes*, 961 F.2d 629, 634 (7th Cir. 1992) (“speculation cannot be the basis of a jury verdict”).

To prevail on trademark or trade name infringement claims, Defendants were required to prove both: (1) trademark validity and (2) infringement. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). Here, Defendants failed on both elements of proof, providing separate and independent bases to overturn the jury verdict.

### a. NCI is Entitled to Judgment as a Matter of Law Because Defendants’ Trademark and Tradename Infringement Proof as to Consumer Confusion is Legally Insufficient

Defendants’ infringement claims fail because they did not present legally sufficient evidence of consumer confusion for “Rabin Cone Contrast Test” and “Innova.” This alone requires the jury verdict to be overturned on JMOL.

To establish infringement, Defendants were required to prove that NCI’s use of the challenged term created a likelihood of confusion among consumers as to the source, sponsorship, or affiliation of the parties’ products or services. *See Platinum Home*, 149 F.3d at 726. Courts in the

2

Seventh Circuit evaluate likelihood of confusion using a multi-factor test, *Smith Fiberglass Prods. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993), with **confusion as to source** being the touchstone of the infringement analysis. *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015); *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 926 (N.D. Ind. 2013) (***"it is not enough that there just be some generalized confusion: trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."***). The fatal flaw in Defendants entire approach at trial is that their evidence focused on "some generalized confusion" rather than "mistaken purchasing decisions" as required by law. *Fortres Grand Corp.*, 947 F. Supp. 2d at 926. Viewing the trial evidence through this correct legal prism demonstrates why JMOL should be granted in favor of Plaintiffs.

First, the relevant consumers exercise a high degree of care. The products at issue are expensive, specialized visual testing software products purchased by sophisticated institutional buyers, including government entities and professional organizations. Tr. at 123:25–124:6; 124:23–130:10; 135:2–9; 166:12–21; 167:25–168:9; 179:10–16; 641:6–23; 669:4–670:20; PTX 073 (Ex. A), 077 (Ex. B)[1]. Such purchasers engage in careful procurement processes, technical review, and vendor comparison. Tr. at 491:7–492:3; DTX 039 (Ex. C). This high degree of consumer care reduces the possibility of confusion, as the customers know who they are buying from—they know the source of the products. *Rust Env't & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997) ("We have found that where consumers are sophisticated, deliberative buyers, confusion is less likely."); *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 860 (N.D Ill. 2018) ("[w]hen consumers are sophisticated—for example, if the relevant purchasers are primarily within a commercial industry—they exercise a high degree of care, minimizing the likelihood of confusion.").

---

[1] Due to the size of Exhibit B, we were unable to attach to the filing. This is an exhibit of Innova Invoices and Plaintiffs will be ready to send the exhibit upon request from the Court.

3

Next, Defendants presented no evidence of actual confusion. They introduced no testimony from customers, no documented purchasing mistakes, no misdirected communications, no survey evidence. Defendants failed to present any testimony from a marketing expert, or any survey evidence showing a likelihood of confusion. In fact, Defendants' own evidence negates confusion.

The documentary materials concerning the U.S. Air Force demonstrated that this highly sophisticated purchaser understood multiple vendors (NCI and Innova) both offered comparable testing products under the descriptive terminology "Rabin Cone Contrast Test" to refer to products offered by both parties. Tr. at 492:1–12; 663:7–19. Rather than showing confusion, this evidence reflects that the U.S. Air Force knew that NCI and Innova were separate companies, each sourcing their own vision testing systems. The testimony presented by Defendants referenced only regulatory approval issues within the Air Force—i.e., which test was approved—***not confusion as to product source***. *Id*. at 492:20–493:13 ("within the Air Force, there was a lot of confusion in the beginning about which test was -- was approved. Innova Systems was approved, and NCI was not approved. And there was a lot of confusion. I had calls that said that Innova is no longer approved, which wasn't true . . ."). By law, generalized confusion does not meet the required source confusion. *Fortres Grand*, 947 F. Supp. 2d at 927, and Defendants' own evidence shows differentiation rather than confusion - - recognition that two vendors offer similar products reflects marketplace awareness, not source confusion.

Finally, there was no evidence of intent to palm off. In describing the alleged infringement, Defendants admitted that NCI had its own separate trade show booth, clearly identified with the NCI company name, and the products themselves were always labeled with the NCI brand. Tr. at 270:2–275:12; DTX 021–26 (Ex. D). At all times, NCI identified itself as the source of its own products, rather than palming itself off as Innova.

Because Defendants failed to present legally sufficient evidence of likelihood of confusion as to both "Rabin Cone Contrast Test" and "Innova," judgment as a matter of law is warranted on this basis alone.

### b. NCI is Also Entitled to Judgment as a Matter of Law Because Defendants' Trademark and Tradename Infringement Proof as to Protectability is Legally Insufficient

#### 1. Legal Standards

Protectability of a trademark turns on whether the mark "specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). When the "trade name or mark is not registered with the United States Patent and Trademark Office, the burden is on the claimant, [Defendants] in the instant case, to establish that it is entitled to protection " *Id*. at 727.

Descriptive marks receive no automatic protection and are protectable only upon proof of secondary meaning within the relevant consuming community. *Id*. Courts evaluate secondary meaning through evidence such as (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Id*. at 728; *Echo Travel, Inc. v. Travel Assocs.*, 870 F.2d 1264, 1267 (7th Cir. 1989) (explaining that secondary meaning may be shown through direct evidence, including consumer testimony and surveys, or circumstantial evidence such as exclusivity, length and manner of use, advertising efforts, sales and customer base, market position, and proof of intentional copying).

Secondary meaning exists only when the mark or name "has been used so long and so exclusively by one company in association with its products or services in that particular industry that the [name or mark] has come to mean that those products or services are the company's trademark." *Platinum Home,* 149 F.3d at 728. Courts further require that the party "establish that its

5

mark acquired secondary meaning *before* the alleged infringer first began using the allegedly infringing mark." *Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 626–27 (N.D. Ill. 2017) (emphasis added); *Trasco Wellness, LLC v. Tampa Bay Spine & Sport*, No. 8:23-cv-02536-WFJ-LSG, 2025 U.S. Dist. LEXIS 195149, at * 31 (M.D. Fla. Oct. 2, 2025); *PlaSmart, Inc. v. Wincell Int'l, Inc.*, 442 F. Supp. 2d 53, 60 (S.D. N.Y. 2006).

### 2. Rabin Cone Contrast Test

As a matter of law, Defendants failed to prove at trial that their alleged RCCT mark is protectable. First, the purported "Rabin Cone Contrast Test" is not a registered trademark. Trial testimony confirmed that Defendants hold no federal registration for "Rabin Cone Contrast Test." Tr. at 339:12–14. Accordingly, Defendants bore the burden of proving distinctiveness or secondary meaning.

Second, the term is descriptive. It describes the nature and methodology of the test itself rather than identifying product source. Defendants admit that "Cone Contrast Test" is not protectable (Tr. at 338:8–339:7) so their alleged mark is based solely on a personal surname—"Rabin"—which further limits protectability. Personal names are generally treated as descriptive marks and are afforded "a lesser degree of [trademark] protection than suggestive or fanciful marks     " *Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 518 (N.D. Ill. 2011). Courts apply this rule out of reluctance to prevent individuals from using their own names in commerce and from concern that granting exclusive rights in a surname would deprive the consuming public of valuable source-identifying information. *Id.* Consistent with this principle, the Lanham Act bars registration of marks that are "primarily merely a surname" absent proof of secondary meaning. 15 U.S.C. §§ 1052(e)(4), (f).

Courts have recognized limited circumstances where surname-based marks may be treated

6

as descriptive—for example, where restricting the mark would not prevent the individual from doing business under his own name, where the name is uncommon, and where exclusivity would not deprive the public of useful information. *Bobak Sausage*, 805 F. Supp. 2d at 518. None of those circumstances apply here. Granting Defendants exclusivity over the surname "Rabin" in connection with cone contrast testing would directly impede others—including Dr. Rabin himself—from accurately describing or marketing similar testing methodologies. Defendants' own testimony confirms this monopolistic effect. When asked whether Dr. Rabin could use his own name in connection with a cone contrast test, Defendants responded:

> Q. You wouldn't want Jeffrey Rabin to use his own name on his
> Cone contrast test?
> A. No, because that would be confusing.

Tr. at 341:8–10. Defendants further testified they would require him to "name it a different name." *Id.* at 341: 6. This admission underscores the precise concern underlying the surname rule: trademark law disfavors granting exclusive rights that prevent individuals from using their own names in commerce absent compelling proof of secondary meaning. Because Defendants seek precisely that result—without having established distinctiveness—the asserted mark is not protectable as a matter of law.

Indeed, because the alleged mark is both descriptive and surname-based, Defendants were required to present compelling evidence of secondary meaning. They did not.

In *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, the Seventh Circuit affirmed the district court's determination that the plaintiff failed to establish secondary meaning in its descriptive mark. *Platinum Home*, 149 F.3d at 728–29. The court held that the plaintiff's evidence—consisting primarily of advertising efforts, promotions, and limited sales history—was insufficient to demonstrate that consumers associated the descriptive term "platinum" with a single commercial

source. *Id*. The court explained that advertising and sales evidence, standing alone, is circumstantial and does not necessarily establish consumer source association, particularly where marketing does not emphasize the mark itself. *Id.* at 729. Because the record failed to show that the public had come to identify the term with the plaintiff's business, the mark lacked secondary meaning and was not entitled to trademark protection. *Id*.

Like the plaintiff in *Platinum Home,* Defendants offered *no* consumer testimony, *no* survey evidence of any kind, and *no* evidence regarding the scope or impact of their extremely limited sales and advertising efforts. For example, Defendants failed to present reliable sales data or market share evidence demonstrating that the consuming public associates the alleged mark exclusively with Defendants. Instead, Defendants only used the designation since approximately mid-2012 and had displayed it in brochures, emails, invoices, and trade show materials. Tr. at 459:21–22; 460:6–14; 462–65; 469:9–17. Such evidence demonstrates minimal use—not consumer association—and is legally insufficient to establish secondary meaning.

Critically, Defendants also failed to prove that any alleged secondary meaning existed prior to NCI's entry into the market, which is a required showing for trademark protectability. *See Checker Car Club*, 262 F. Supp. 3d at 626–27. Defendants established that NCI displayed "Rabin Cone Contrast Test" at trade shows beginning around 2015. Tr. at 275:7–12; 470:3–10. While Defendants claimed earlier internal use, they offered no consumer perception evidence from the pre-2015 period demonstrating source identification. The only third-party materials cited at trial—a 2016 article and a 2019 publication referencing two RCCT versions—post-date NCI's entry and therefore cannot establish preexisting secondary meaning. *Id*. at 468:3–23; 492:1–12.

Defendants' own documentary evidence undermined any claim of secondary meaning. Specifically, Defendants introduced materials showing that the U.S. Air Force used the term "Rabin

8

Cone Contrast Test" to refer to both Defendants' product and NCI's product interchangeably. *Id*. at 492:1–12. Such evidence demonstrates that at least one sophisticated institutional consumer did not associate the alleged mark exclusively with Defendants. Rather than proving source identification, this evidence reflects generic or descriptive use of the term within the marketplace.

Because Defendants failed to prove secondary meaning—let alone pre-NCI secondary meaning—the alleged "Rabin Cone Contrast Test" mark is not protectable as a matter of law, providing an additional basis to overturn the jury verdict.

## III.    CONCLUSION

For the reasons stated herein, NCI respectfully requests the Court to enter judgment as a matter of law in favor of NCI on Defendants' Count IX (federal trademark infringement), VII (trade name infringement), and X (common law trademark infringement).

Respectfully submitted,

Dated: May 8, 2026

/s/ Raymond P. Niro, Jr.
Raymond P. Niro, Jr.
RAYMOND P. NIRO LAW, LLC
155 North Wacker Drive, Suite 4250
Chicago, IL 60606
(312) 803-3682
RPN@nirolawfirm.com

*Attorney for Plaintiffs,*
Nordstrom Consulting, Inc. and
Steven Nordstrom

9

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 8, 2026, the foregoing

## **PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON DEFENDANTS' COUNT IX, VII, AND X**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

/s/ Raymond P. Niro, Jr.
*Attorney for Plaintiffs,*
RAYMOND P. NIRO LAW, LLC

10